IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY JON,<br>TDCJ #626840,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM STEPHENS, Director,<br>Texas Department of Criminal<br>Justice - Correctional<br>Institutions Division,<br><br>    Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-15-0624 |

**MEMORANDUM OPINION AND ORDER**

The petitioner, Roy Jon (TDCJ #626840), is a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Jon has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody under 28 U.S.C. § 2254, challenging the result of a prison disciplinary proceeding. (Docket Entry No. 1). The respondent has answered with a Motion for Summary Judgment with Brief in Support, arguing that the petition should be dismissed. (Docket Entry No. 10). The respondent also has provided records of the administrative investigation and disciplinary hearing, including an audio CD of the proceeding. (Docket Entry Nos. 11, 12). Jon has filed Objections to the Respondent's Motion for Summary Judgment.

(Docket Entry No. 13). After reviewing all of the pleadings, the administrative records, and the applicable law, the court will grant the respondent's motion and dismiss this action for the reasons explained below.

## I. Background

Jon is presently incarcerated as the result of a judgment and sentence entered against him in Dallas County, Texas.[1] In that proceeding, Jon was convicted of delivery of a controlled substance and sentenced to 25 years' imprisonment.[2]

Jon does not challenge his underlying conviction. Instead, he challenges the result of a prison disciplinary conviction lodged against him at the Ellis Unit on October 13, 2014, in TDCJ Case No. 20150044186.[3] The administrative record shows that Jon was charged with violating prison disciplinary rules by refusing to shave as required by TDCJ grooming standards, which require prisoners to be clean shaven.[4] According to a report of the administrative investigation, Jon admitted that he did not shave on the day in question.[5]

---

[1] Docket Entry No. 1, at 2.

[2] Id.

[3] Id. at 5.

[4] Docket Entry No. 11-2, at 3.

[5] Id. at 5.

At a hearing held on October 13, 2014, Jon denied violating the grooming policy and argued the charging officer did not give him an opportunity to shave before filing disciplinary charges against him.[6] The charging officer testified that inmates are given razors once a week and that Jon clearly had not shaved.[7] The disciplinary hearing officer found that Jon had an opportunity to shave that week, but did not do so.[8] After considering the charging officer's testimony and his report, the disciplinary hearing officer found Jon guilty as charged of refusing to comply with prison grooming standards.[9] As punishment, the hearing officer restricted Jon's recreation, commissary and telephone privileges for 45 days.[10] Jon also forfeited 20 days of previously earned credit for good conduct (i.e., "good-time credit") and his "line class" or classification status was ordered to remain at level three.[11]

Jon filed a Step 1 grievance to challenge his conviction, alleging that his right to due process was violated when the charging officer and the investigating officers falsified the

---

[6] Id. at 11; Docket Entry No. 12 (audio CD).

[7] Docket Entry No. 12.

[8] Id.

[9] Docket Entry No. 11-2, at 3.

[10] Id.

[11] Id.

offense report and failed to adhere to prison policy.[12] Jon alleged further that the disciplinary hearing officer was biased against him and that his conviction was not supported by sufficient evidence because the charging officer did not give Jon a direct order to shave or an opportunity to shave before charging him with refusing to comply with the grooming policy.[13] The assistant warden who reviewed the grievance (Warden Gorsuch) affirmed the conviction after noting "no procedural errors" and observing further that there was "sufficient evidence to support a finding of guilt."[14]

In his Step 2 appeal, Jon objected that Warden Gorsuch failed to comply with prison policies and procedures by addressing his Step 1 grievance.[15] Jon argued further that prison officials were enjoined by a court order from enforcing the TDCJ grooming policy in a case involving another prisoner who was not allowed to maintain a quarter-inch beard as a religious exercise.[16] An administrative official (K. Ward) found that there was "sufficient evidence to sustain the charge and the finding of guilt" and that

---

[12] Docket Entry No. 11-1, at 3.

[13] Id.

[14] Id. at 3-4.

[15] Id. at 5.

[16] Id.

there were "no due process or procedural errors identified."[17] Accordingly, Jon's appeal was found to be "without merit."[18]

Jon now seeks a federal writ of habeas corpus to challenge his conviction for refusing to comply with the TDCJ grooming policy. Jon contends that the TDCJ grooming policy violates the First Amendment because it imposes a substantial burden on the exercise of his Muslim religious faith.[19] Jon argues further that there was insufficient evidence to support his conviction for refusing to comply with TDCJ grooming standards.[20] In addition, Jon contends that the disciplinary hearing officer was "partial" or biased against him because he would not allow Jon to pose certain questions to the charging officer.[21] Jon argues further that he was denied an opportunity to be heard because the disciplinary hearing officer had already determined his guilt before Jon was allowed to give his testimony.[22]

The respondent argues that the petition must be dismissed because Jon failed to exhaust available administrative remedies by raising all of his claims during both steps of the grievance process before seeking relief in federal court. The respondent

---

[17] Id. at 6.

[18] Id.

[19] Docket Entry No. 1, at 8.

[20] Id. at 7, 8.

[21] Id. at 9-10.

[22] Id.

argues in the alternative that Jon's First Amendment claim is not cognizable on habeas review and that his remaining claims fail for other reasons. From its own review of the record, the court concludes that the disciplinary conviction was supported by sufficient evidence and did not violate due process. Accordingly, Jon's petition will be dismissed.

## II.  Discussion

### A.  Exhaustion of Administrative Remedies

The respondent argues that Jon did not raise all of his claims during both steps of the grievance process. Because Jon failed to properly present his claims to state authorities in compliance with Texas law, the respondent argues that the petition should be dismissed for failure to exhaust available state administrative remedies as required by 28 U.S.C. § 2254(b).

Under § 2254(b), a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." Sones v. Hargett, 61 F.3d 410, 414 (5th Cir. 1995). Texas prisoners are not required to present claims concerning disciplinary convictions to the state courts in a state habeas corpus petition, because those claims are not cognizable on state habeas review. See Ex parte Brager, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986). Instead, Texas prisoners who challenge the result of a prison disciplinary conviction must seek relief through the two-step prison grievance process that is available within the

Texas Department of Criminal Justice.[23] Id. Section 501.008 of the Texas Government Code requires inmates to fully exhaust the administrative grievance process before resorting to court. If an inmate fails to do so, his claims may be dismissed for failure to exhaust administrative remedies. See Ex Parte Stokes, 15 S.W.3d 532, 533 (Tex. Crim. App. 2000).

Although decisions about prison grievances are made by TDCJ, and not by a state court, there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. See Prieser v. Rodriguez, 93 S. Ct. 1827, 1837 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). Thus, the Fifth Circuit has required Texas prisoners to exhaust the TDCJ grievance process before seeking federal habeas corpus review of disciplinary matters. See Gartrell v. Gaylor, 981 F.2d 254, 258 n.3 (5th Cir. 1993) (citing Baxter v. Estelle, 614

---

[23] "The Texas Department of Criminal Justice currently provides a two-step procedure for presenting administrative grievances." Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998). In Step 1, the prisoner submits a grievance at the institutional level. Id. If the decision at Step 1 is unfavorable, Step 2 permits the prisoner to appeal "to the division grievance investigation with the . . . Texas Department of Criminal Justice." Id.

F.2d 1030, 1031-32 (5th Cir. 1980) ("[A] federal court may not grant habeas corpus relief to a petitioner who has failed to exhaust all administrative remedies, including an appeal to the Director of Corrections."); Lerma v. Estelle, 585 F.2d 1297, 1299 (5th Cir. 1978) (holding that a Texas prisoner who had not exhausted "his clearly available administrative remedies" was properly denied habeas relief in the district court)).

Jon makes no mention in his Step 1 grievance about his claim that the TDCJ grooming policy imposes a substantial burden on his Muslim religious beliefs.[24] Although Jon briefly mentions his Muslim religious beliefs in his Step 2 grievance,[25] Jon was required to present facts in support of his claim in both steps of the grievance process in order to exhaust his remedies with respect to this allegation. See Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001) (substantial compliance is not sufficient; a prisoner must pursue the grievance remedy to conclusion to exhaust remedies); Johnson v. Johnson, 385 F.3d 503, 517-18 (5th Cir. 2004) (explaining that a prisoner need not present legal theories, but must provide sufficient facts to give fair notice of a specific problem). Accordingly, Jon did not exhaust his administrative remedies with respect to the first ground for relief raised in his petition.

---

[24] Docket No. 11-1, at 3.

[25] Id. at 5.

Jon's remaining claims are referenced in his Step 1 grievance, which asserts that there was insufficient evidence to support the conviction and that the hearing officer was biased against him, having predetermined Jon's guilt.[26] However, Jon does not raise any of these claims in his Step 2 grievance.[27] By failing to raise his claims in both steps of the grievance process, Jon did not exhaust his administrative remedies with respect to his second, third and fourth grounds for relief. See Wright, 260 F.3d at 358.

As this review shows, Jon did not present all of the claims raised in his habeas corpus petition in both his Step 1 and Step 2 grievances. By failing to present his claims properly to state authorities in both steps of the grievance process, Jon has not fully exhausted his administrative remedies. As a result, all of Jon's claims are subject to dismissal for lack of exhaustion. See Lerma, 585 F.2d at 1299.

**B.   Jon's First Amendment Claim**

The respondent argues that Jon's first ground for relief, which challenges the constitutionality of the TDCJ grooming policy, is not actionable in a federal habeas corpus proceeding. Claims concerning the conditions of confinement or prison procedures that do not affect the timing of release from custody are actionable, if at all, under 42 U.S.C. § 1983. See Carson v. Johnson, 112 F.3d

---

[26]   Id. at 3.

[27]   Id. at 5-6.

818, 820-21 (5th Cir. 1997) ("If a favorable determination would not automatically entitle the prisoner to accelerated release . . . the proper vehicle is a § 1983 suit.") (internal citations and quotation marks omitted); see also Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994) ("The core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement.") (citing Spina v. Aaron, 821 F.2d 1126, 1128 (5th Cir. 1987)).

The court agrees that Jon's constitutional challenge to the TDCJ grooming policy is properly characterized as a claim governed by § 1983.[28] Indeed, the two cases that Jon relies upon in asserting this claim arise under § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). See Holt v. Hobbs, 135 S. Ct. 853 (2015); Garner v. Kennedy, 713 F.3d 237 (5th Cir. 2013). Rather than separate this claim and recharacterize it as one under § 1983, the court will dismiss this

---

[28] To the extent that Jon claims that prison officials failed to properly apply the grooming policy during the disciplinary proceeding, it is well established that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (citations omitted). Jon does not show that he was convicted in violation of the right to due process in this case for reasons discussed further below.

claim because the record reflects that Jon failed to properly exhaust administrative remedies with respect to his First Amendment challenge. See 42 U.S.C. § 1997e(a); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001); Woodford v. Ngo, 126 S. Ct. 2378 2387 (2006); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Accordingly, the court does not address this claim any further.

## C. Jon's Due Process Claims

To the extent that Jon lost good-time credit as the result of his disciplinary conviction,[29] his remaining claims are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wolff v. McDonnell, 94 S. Ct. 2963, 2975 (1974). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 96 S. Ct. 893, 902 (quoting Morrissey v. Brewer, 92 S. Ct. 2593, 2600 (1972)). Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Wolff, 94 S. Ct. at 2977. In

---

[29] To the extent that Jon temporarily lost privileges and was retained at level 3 classification status, it is well established that these sanctions do not implicate due process concerns. See Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997); Malchi v. Thaler, 211 F.3d 953, 958-59 (5th Cir. 2000). Thus, Jon's loss of good-time credits is the only sanction that is subject to review in this federal habeas action.

this setting, the minimum amount of procedural due process is generally limited to:

    (1)    advance written notice of the disciplinary charges;

    (2)    an opportunity to call witnesses and present documentary evidence (when the presentation is not unduly hazardous to institutional safety and correctional goals); and

    (3)    a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action.

See id. at 2978-80. In addition, there must be "some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Correctional Institution v. Hill, 105 S. Ct. 2768, 2775 (1985). If these criteria are met, a prisoner cannot show that he was punished without due process.

The record confirms that Jon was given advance notice of the charges and afforded a disciplinary hearing where he had an opportunity to be heard by making a statement on his own behalf and by presenting questions to the charging officer.[30] Although there is no right to counsel in the prison disciplinary context, see Baxter v. Palmigiano, 96 S. Ct. 1551, 1556-57 (1976), the record reflects that a counsel substitute was appointed to assist Jon with his disciplinary proceeding. Jon does not claim that he received insufficient notice of the charges, that he was denied witnesses in his defense, or that he was denied a written statement of the reason for his conviction. Although Jon contends that he was

---

    [30]    Docket Entry No. 11-2, at 3, 8-12.

denied an opportunity to present certain questions, the record discloses that the disciplinary hearing officer denied his request to pose those questions because they were irrelevant.[31] A prisoner is not entitled to introduce irrelevant matters at a disciplinary hearing. See Wolff, 94 S. Ct. at 2980 (recognizing that prison officials have discretion to impose limits on evidence presented a hearing "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases"). Thus, Jon was not denied an opportunity to present evidence.

Jon contends that the hearing officer was "partial" or biased against him because his guilt was predetermined. Other than pointing to the hearing officer's evidentiary rulings and questions posed by him at the hearing, which do not constitute proof of impermissible bias, Jon does not allege facts demonstrating that he was denied an impartial decision-maker. See, e.g., Liteky v. United States, 114 S. Ct. 1147, 1157 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Without more, Jon's conclusory allegations of bias are insufficient to raise an issue on habeas corpus review. See Schlang v. Heard, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case").

---

[31] Docket Entry No. 11-2, at 10 (noting that three out of ten proposed questions were excluded based on relevance); Docket Entry No. 12 (denying the proposed questions based on relevance).

Likewise, although Jon contends that there was insufficient evidence to support his conviction, the hearing officer based his finding of guilt on the charging officer's testimony and offense report.[32] A charging officer's report and testimony is sufficient evidence to sustain the disciplinary conviction in this instance. See Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (finding that the offense report, standing alone, meets the "some evidence" standard).

Based on this record, Jon does not demonstrate that his disciplinary conviction failed to meet the minimum amount of procedural due process required by law. As a result, Jon does not establish that he was denied due process at his disciplinary proceeding or that he was deprived of good-time credits in violation of his constitutional rights. Accordingly, his petition will be dismissed.

## III.  Certificate of Appealability

The habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, which requires a certificate of appealability to issue before an appeal may proceed. See Hallmark v. Johnson, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a

---

[32] Docket Entry No. 11-2, at 3.

circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (citing 28 U.S.C. § 2253(c)(1)). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 123 S. Ct. at 1039. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it

debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, the court concludes that jurists of reason would not debate whether the petitioner failed to exhaust state remedies before filing his petition in federal court or whether his disciplinary conviction was entered in violation of the Due Process Clause. Therefore, a certificate of appealability will not issue.

### IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Respondent Stephens's Motion for Summary Judgment (Docket Entry No. 10) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 29th day of July, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE